IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DANIEL ORTIZ, JR., | § | |
| TDCJ-CID NO. 484450, | § | |
| Petitioner, | § | |
| v. | § | CIVIL ACTION NO. H-09-1646 |
| | § | |
| RICK THALER,[1] | § | |
| Respondent. | § | |

OPINION ON DISMISSAL

Petitioner Daniel Ortiz, Jr., a state inmate proceeding *pro se*, seeks federal habeas relief from disciplinary conviction number 20080332422, for being out of place, which is a Level 2, Code 27.0 violation of TDCJ-CID's Disciplinary Rules and Procedures for Offenders. (Docket Entry No.1). As a result of such conviction, petitioner was confined in solitary for fifteen days, forfeited thirty days of good conduct credit, was restricted from the commissary, his property and visitation, and had his class line status reduced. (*Id.*). He was also excluded from the Gang Renouncement and Disassociation ("GRAD") Process and returned to administrative segregation. Petitioner indicates that he is eligible for release to mandatory supervision. (*Id.*).

Respondent has filed a motion for summary judgment. (Docket Entry No.6). Petitioner has not filed a response to the motion. For the reasons to follow, the Court will grant respondent's motion for summary judgment and dismiss this habeas action.

I. BACKGROUND

Ramsey I Unit's Sergeant Brennan charged petitioner with the major offense of being out of place. (Docket Entry No.8, page 4). Brennan alleged that on July 31, 2008, when he returned to the shower area from escorting other offenders to their cells, he found that plaintiff

---

[1] Rick Thaler has replaced Nathaniel Quarterman as the Director of the Texas Department of Justice-Correctional Institutions Division. Accordingly, Thaler is automatically substituted as a party. FED. R. CIV. P. 25(d)(1).

had left the shower area unattended. Officer Rizvi informed Brennan that he had instructed petitioner and another inmate to wait outside the shower room door but they listened to another inmate who told them to return to their cells. (*Id*., page 10). Brennan saw petitioner standing at the bottom of the stairs to the west turnout, without an escort and without authorization. (*Id*., page 8).

Petitioner entered a guilty plea to the offense at the disciplinary hearing on August 9, 2008. (*Id*., page 4). He stated at the hearing that "[i]t did not cross his mind he needed an escort." (*Id*., page 5). He also stated that no one told him not to go anywhere. (*Id*.). He was found guilty of the offense.

On October 12, 2008, petitioner filed Step 1 Grievance Number 2009024948, in which he questioned why he had been returned to administrative segregation even though he had completed the punishment assessed for disciplinary conviction; he also requested that he be sent back to the GRAD program. (*Id*., page 13). Petitioner was informed by Warden Moore on November 10, 2008, that because the disciplinary offense was classified as a major offense, he had been removed from the GRAD program and returned to administrative segregation due to his confirmed gang member status. (*Id*., page 14).

In Step 2 Grievance Number 100924948, petitioner complained that Sergeant Brennan and other officers had retaliated against him while petitioner was in the GRAD program because of a case that petitioner had filed in federal court. (*Id*., page 15). Petitioner complained that Brennan charged him with the disciplinary offense because petitioner had filed such case and because Brennan wanted to remove petitioner from the GRAD program. (*Id*.). TDCJ administrator Kevin Mayfield responded that there was no evidence to support petitioner's retaliation allegations. (*Id*., page 16).

Petitioner filed the pending petition on May 15, 2009, seeking federal habeas relief on the following grounds:

1. The disciplinary case was improperly graded as a major case because the evidence shows that plaintiff was unaware that he needed to wait for an escort. Contrary to Officer Rizvi's statement, no officer was present when petitioner came out of the west turn-out shower and no one told petitioner to wait for an escort. Because petitioner's disciplinary conviction was based on a falsehood, petitioner has been excluded from the GRAD program, unfairly treated as a confirmed gang member, and returned to administrative segregation.

2. Sergeant Brennan and other officers harassed petitioner because of a pending federal case and wrote disciplinary cases against him because they did not want him in the GRAD program.

3. Petitioner has been falsely accused by the State Classification Committee of being staff assaultive and being a gang member, neither of which is true.

(Docket Entry No.1, pages 7, 15).

Respondent contends that all of petitioner's claims are unexhausted and procedurally barred because he did not file the grievances within the parameters proscribed by TDCJ. (Docket Entry No.6, page 6). Respondent, however, moves to dismiss only the retaliations claim as unexhausted and procedurally barred. (*Id.*, pages 6-7). Alternatively, respondent moves for summary judgment on ground that petitioner has failed to show that he has been deprived of a constitutional right. (*Id.*, page 14).

## II. ANALYSIS

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial. *Duckett v. City of Cedar Park,*

3

*Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  *U.S. v. Houston Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

### A. Exhaustion

A state inmate must exhaust all available state remedies before proceeding in federal court unless circumstances exist which render the state corrective process ineffective to protect the prisoner's rights.  28 U.S.C. § 2254(b), (c).  Although decisions about prison grievances are made by TDCJ, and not by "courts of the State," there is no valid reason that the exhaustion requirement found in 28 U.S.C. § 2254(b) should not also apply where a prisoner is required to pursue the administrative grievance process.  *See Prieser v. Rodriguez*, 411 U.S. 475, 492 (1973) (pointing to the prison grievance process and noting that, because the "internal problems of state prisons involve issues so peculiarly within state authority and expertise, the States have an important interest in not being bypassed in the correction of those problems").  In fact, the Fifth Circuit has long held that inmates seeking relief from prison disciplinary cases must exhaust their available administrative remedies before pursuing a federal writ of habeas corpus.  *Lerma v. Estelle*, 585 F.2d 1297, 1299 (5th Cir. 1978); *see also Kimbrell v. Cockrell*, 311 F.3d 361, 364 (5th Cir. 2002) (holding that "the timely pendency of prison grievance procedures" tolls the statute of limitations for habeas corpus petitions found in 28 U.S.C. § 2244(d) because prisoners are required to pursue administrative remedies).

A prisoner must complete both steps of the grievance process to satisfy the exhaustion requirement. *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). Moreover, an administrative grievance must provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit. *Id.* at 522 (noting that "[i]n deciding how much detail is required in a given case . . . , a court must interpret the exhaustion requirement in light of its purposes, which include the goal of giving officials 'time and opportunity to address complaints internally'").

The record in this case reflects that petitioner did not comply with TDCJ grievance procedures with respect to his claims regarding the grade of the offense, Officer Rizvi's false statement, and retaliation. The record also shows that petitioner did not exhaust his claim that the State Classification Committee relied on false information that he was staff assaultive and a gang member. (Docket Entry No.1, page 19). Petitioner filed Step 2 Grievance Number 100924948 on November 16, 2008, and TDCJ-CID administrator Kevin Mayfield responded to such grievance on January 13, 2009, months before petitioner was notified of the State Classification Committee's ruling on April 30, 2009. (Docket Entries No.1, page 19; No.8, page 16). Respondent, however, contends that plaintiff technically raised the false classification as gang member and staff assaultive claim in both grievances as reasons set forth to justify his disciplinary punishment and transfer to administrative segregation. (Docket Entry No.6, page 7).

Even if petitioner did not literally exhaust the administrative remedies with respect to these claims, the purpose of the exhaustion requirement was satisfied by the response given by each TDCJ administrator. For this reason, Court will address the merits of petitioner's claims.

5

B. Due Process

Prisoners charged with rule infractions are entitled to certain due process rights under the Fourteenth Amendment when disciplinary action may result in a sanction that impinges upon a liberty interest. *Hudson v. Johnson*, 242 F.3d 534, 535-36 (5th Cir. 2001). Sanctions that are "merely changes in the conditions of [an inmate's] confinement" do not implicate due process concerns. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Limitations imposed upon commissary privileges, and a cell restriction or solitary confinement on a temporary basis, are the type of sanctions that do not pose an atypical or significant hardship beyond the ordinary incidents of prison life. *Id.*; *see also Sandin v. Conner*, 515 U.S. 472, 486 (1995) (refusing to recognize a liberty interest in administrative segregation). The Fifth Circuit has also decided that a reduction in a prisoner's class status and its potential impact on good-time credit earning ability are not protected by the Due Process Clause. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).

Moreover, petitioner's exclusion from the GRAD program, which resulted from the disciplinary conviction, does not affect the duration of his sentence; therefore, it does not infringe on petitioner's constitutional rights. *See Tamez v. Buentello*, 80 Fed. Appx. 933, 934 (5th Cir. 2003) (citing *Sandin*, 515 U.S. at 484). Likewise, to the extent that the State Classification Committee has relied on false information that petitioner was staff assaultive and a gang member, such reliance does not infringe on petitioner's constitutional rights. An inmate does not a right to have false information removed from his prison record and placement in administrative segregation based on allegedly false information does not constitute a deprivation of a constitutionally cognizable liberty interest. *Velasquez v. Woods*, 329 F.3d 420, 421-22 (5th Cir. 2003); *Luken*, 71 F.3d at 193.

Because petitioner is eligible for mandatory supervision, the forfeiture of his good time credit does implicate due process concerns. *See Teague v. Quarterman,* 482 F.3d 769, 777 (5th Cir. 2007); *Malchi,* 211 F.3d at 958-59. For this reason, the revocation of those credits must comply with the minimum amount of procedural protection required under the circumstances. *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454 (1985); *Henson v. United States Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000). The minimum amount of due process required for prison inmates under these circumstances includes: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence when the presentation is not unduly hazardous to institutional safety and correctional goals; and (3) a written statement by the fact finder of the evidence relied upon and the reason for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974). These requirements are flexible, however, and must necessarily be balanced against legitimate penological interests. *Superintendent, Mass. Correctional Institution*, 472 U.S. at 454. Petitioner does not challenge his conviction on these grounds.

Petitioner's challenge to the grading of his disciplinary conviction and the truthfulness of Officer Rizvi's statements is a challenge to the sufficiency of the evidence to support the disciplinary conviction. Federal habeas review of the sufficiency of the evidence to support a disciplinary conviction is extremely limited. Due process requires only "some evidence to support the findings made in the disciplinary hearing." *Superintendent, Mass. Correctional Institution*, 472 U.S. at 457. The Supreme Court has determined that "[a]scertaining whether [the sufficiency-of-evidence] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the

record that could support the conclusion reached by the disciplinary board." *Id.* at 455. "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson*, 242 F.3d at 536-537. The information provided in a written incident report standing alone can satisfy the "some evidence" standard. *Id.* at 537. "Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision." *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001).

In this case, petitioner entered a guilty plea to the disciplinary violation after receiving notification of the charge and its grade as a major offense. Even though petitioner disputed Officer Rizvi's statement that Rizvi told him not to leave the area during disciplinary proceedings, the statements given by Sergeant Brennan and Officer Rizvi fulfill the "some evidence" standard. Based on the offense report, the Court finds that petitioner's rights set forth in *Wolff* have not been abridged and that there was clearly some evidence in the record to support the disciplinary hearing officer's decision in this case.

Respondent is entitled to summary judgment on petitioner's first and third claims.

### C. Retaliation

A retaliation claim in the context of habeas corpus review of prison disciplinary proceedings is approached with skepticism, as the Fifth Circuit Court of Appeals has noted, in pertinent part:

> To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident-such as the filing of disciplinary reports as in the case at bar-would not have occurred. This places a significant burden on the inmate. Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a

8

> chronology of events from which retaliation may plausibly be inferred." Although we decline to hold as a matter of law that a legitimate prison disciplinary report is an absolute bar to a retaliation claim, the existence of same, properly viewed, is probative and potent summary judgment evidence, as would be evidence of the number, nature, and disposition of prior retaliation complaints by the inmate.

*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (footnotes and citations omitted). Where a prisoner argues that he was retaliated against for filing a lawsuit, he must show that the retaliatory adverse act was done "in an effort to chill [his] access to the courts or to punish [him] for having brought suit." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1296 (5th Cir. 1994)). "The relevant showing in such cases must be more than the prisoner's 'personal belief that he is the victim of retaliation.'" *Id.*

Petitioner presents no evidence to support his retaliation claim. Although petitioner claims that three different inmates told him that Brennan and other officers did not want petitioner in the GRAD program because of his pending federal civil rights case, petitioner presents no evidence to support such claim and alleges no chronology of events by which retaliation may be plausibly inferred. Moreover, petitioner does not deny that he was out of place or that he entered a guilt plea to such charge. Accordingly, petitioner's retaliation claim is conclusory and subject to dismissal.

### III. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated

differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

## IV. CONCLUSION

The Court finds that there is no genuine issue of material fact in this habeas action, and that the respondent is entitled to summary judgment as a matter of law. It is, therefore, ORDERED as follows:

1. Respondent's Motion for Summary Judgment (Docket Entry No.6) is GRANTED.

2. This petition is DISMISSED with prejudice.

3. A certification of appealability from this decision is DENIED.

4. All other pending motions, if any, are DENIED.

The Clerk shall provide a copy of the Order to the parties.

SIGNED at Houston, Texas, this 19th day of May, 2010.

                                        MELINDA HARMON
                              UNITED STATES DISTRICT JUDGE